GALLOWAY, ADMINISTRATRIX *v*. DAVIS.

4-6152                                    146 S. W. 2d 536

Opinion delivered January 13, 1941.

*Chas. B. Thweatt* and *Jeff Davis,* for appellant.

*Jack Machen,* for appellee.

McHANEY, J. Appellant is the administratrix of the estate of her deceased husband, D. F. S. Galloway, who died intestate on June 30, 1936. She brought this action against appellees, J. L. Davis and Ella M. Davis, his wife, and W. A. G. Woodward and Mary Davis Woodward, his wife, to recover judgment on ten promissory notes, executed and delivered by appellees to D. F. S. Galloway on July 25, 1928, each for the sum of $2,700, due and payable July 25, 1933, with interest at 7 per cent. per annum, payable semi-annually, from date until paid, and secured by a second mortgage on four certain lots at 7th and Scott streets in the city of Little Rock, which said notes are now lost or destroyed. The answer was a general denial. Trial resulted in a finding by the court that the decedent, payee in said notes, destroyed same in his lifetime, sometime between the due date and the date of his death, thus canceling the debt, and in a decree dismissing the complaint for want of equity.

The facts out of which this litigation arises are substantially as follows: On and prior to July 21, 1928, D. F. S. Galloway was the owner of lots 7, 8, 9 and 10,

block 7, Little Rock, located at the corner of 7th and Scott streets. This property was encumbered by two mortgages, one for $22,500, dated July 21, 1926, to the New York Life Ins. Co. and the other for $29,500, dated July 25, 1927, to the Union Trust Company of Little Rock, and both were due and demand had been made for payment. He also owned a farm of about 700 acres and it was heavily mortgaged to secure other indebtedness. He was unable to pay or to refinance the indebtedness on his Scott street property. His nephew, appellee W. A. G. Woodward, is a son-in-law of appellee, J. L. Davis, and he, Woodward, undertook to help his uncle refinance his indebtedness on the Scott street property and secured Mr. J. L. Davis to assist him in so doing. Accordingly, on July 21, 1928, said Galloway and his wife, the appellant, conveyed by warranty deed said lots to Davis and Woodward reciting a cash consideration of $125,000. It is undisputed that no such consideration was paid. On July 23, 1928, Davis and Woodward borrowed from Federal Bank & Trust Company of Little Rock $65,000 for which they executed their note, secured by a mortgage on said lots, and on July 25, 1928, they executed and delivered the notes in suit and gave a second mortgage on said lots as security for same. From the proceeds of this $65,000 mortgage, they paid off the indebtedness to the New York Life Ins. Co. and to Union Trust Company, and had a balance in their hands of $11,774.14 which they immediately paid to Mr. Galloway. They took charge of said property and tried to sell it, first offering it at $125,000 and finally for $97,000, but were unable to sell it. In 1931, the indebtedness to Federal Bank & Trust Company being due and unpaid, suit to foreclose was filed, in which Mr. Galloway was made a defendant. He filed an answer by his attorney, Judge G. W. Hendricks, in which he admitted the validity and priority of the bank's indebtedness, set up the fact that he had a second mortgage securing the ten notes here in suit, and prayed that he be paid any surplus that a sale of the property might bring over and above the first mortgage debt. No relief was prayed against appellees. At no time did Mr. Galloway try to enforce collection of these notes. Judge

Hendricks testified that he had the notes in his possession at the time he filed the answer in the foreclosure proceeding, but that he does not now have them, nor does he know what became of them. Mr. McNeal, lessee of the Galloway farm, testified that Mr. Galloway told him that he gave Woodward a deed to the Scott street property so that he could refinance it. He also testified that Galloway filed a petition in bankruptcy and talked to him about some indebtedness witness owed Galloway. "I asked him if he couldn't use the notes Davis and Woodward owed him, and he said no, he had destroyed them and that Walter Woodward would not see those notes again." "Q. That he had destroyed them? A. Yes, that he had destroyed them." Mr. Galloway did file a petition in bankruptcy and in Schedule B, containing a list of assets of the bankrupt, he failed to mention this $27,000 worth of notes, although he did later amend his schedule to show an indebtedness of Mr. McNeal which had been omitted. Claude L. Holland testified that Woodward and Davis, in the presence of Galloway, procured him to attend the foreclosure sale of said lots and to bid enough to prevent a judgment over against them and that Mr. Galloway said he wanted the property to bring enough to protect them; that something was said about the notes Mr. Galloway held against them and he said he didn't expect anything from them.

This is the evidence on which the court found that the notes had been destroyed by Mr. Galloway and we are unwilling to say the finding is against the preponderance of the evidence. This leaves out of consideration the testimony of both Davis and Woodward, most of which was incompetent under Schedule 2 to the Constitution or § 5154, Pope's Digest, as the court correctly held. These notes were unconditional and were absolute promises to pay, and it would not be competent to show by parol testimony that the consideration expressed therein was to be paid out of a re-sale of the property only. *Abbott* v. *Kennedy*, 133 Ark. 105, 201 S. W. 830; *Randall* v. *Overland Texarkana Co.*, 182 Ark. 877, 32 S. W. 2d 1064, 75 A. L. R. 1516. The fact that the consideration of $125,000 expressed in the deed was not the

true consideration, the fact that two large mortgages were immediately placed on the property, one for $65,000 and the other for $27,000, and that these lots were placed on the market at a price of $125,000 are strong circumstances that the second mortgage debt was not to be collected, except from a re-sale, and that these amounts would tend to boost the price on a re-sale. However, we prefer to base our decision, as did the court below, on the fact of intentional destruction of the notes by the payee, and that it was never his intention to collect them as against appellees. The evidence hereinbefore recited supports this finding and we are unwilling to say that the facts and circumstances to the contrary, and there are some, are sufficient to overturn this finding. We think it would serve no useful purpose to set out these facts and circumstances again and comment on them separately, but here are a few of them: 1, Payment to Galloway of the $11,774.14; 2, failure to ask for more in the foreclosure suit than the surplus; 3, failure then, or at any other time to enforce payment; 4, disappearance of the notes; 5, failure to list these notes as an asset in bankruptcy; and 6, the testimony of several witnesses, one that he had destroyed them and, two, that he did not intend to collect them.

We find no error, so the decree is affirmed.